WM. C. JAMISON, EXECUTOR OF WM. H. BELL, DECEASED, *v.* SUSAN J. HAY, Respondent, and ROBERT T. SHEPPARD *et al.,* Appellants.

1. *Wills—Legacies—Devisees mentioned by classes—Children of devisees dead at date of will, entitled, how.* — A testator devised a certain remainder of his estate "to the sons and daughters of A." At the date of the will some were dead and some living. *Held,* that although the testator was partially aware of this fact, yet, inasmuch as their deaths were in no manner alluded to in the will, and they were therein regarded as alive, and as all the circumstances attending the making of that instrument showed its object to be that the children of those deceased should share his bounty, therefore, under the statute (Wagn. Stat. 1366, § 11), the children of A. who were living at the

date of the will were not entitled to the whole of said residue as survivors, but the descendants of A.'s other children were entitled to the share which their ancestors, if living, would have taken.

The statute contemplates that where an estate is devised to children and relatives, if part of them are dead and part living, the children of those dead shall take the place of their deceased parents.

At common law the rule is different. Thus, if the property be given simply to the children of A., to be equally divided between them, the entire subject of the gift will vest in any child surviving the testator, without regard to previous deaths; and the rule is the same when the gift is to the children of a person actually dead at the date of the will.

*Appeal from St. Louis Circuit Court.*

*Mumford*, and *Garesche & Mead*, for the grandchildren, appellants.

I. The decisions at common law, relied on, are founded on a principle of lapsed and void legacies, which has been radically changed by our statute. (Gen. Stat. 1865, p. 528, § 11.) The will itself recognizes the relationship referred to in the statute, for the devise is to the sons and daughters of "my uncle," Col. Sheppard. Gen. Stat. 1865, p. 532, § 49, re-enacts the common law, and provides "that the courts, in the construction of last wills, shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." The design of the executor was one of benevolence and of charity. Can any one believe that the testator intended that Mrs. Hay, because by chance sole survivor of her brothers and sisters, should receive from the testator the same share as he had given to his own sister, and this when the nephews and nieces of Mrs. Hay got nothing?

II. If Mrs. Hay was to take the whole bequest if she alone survived the testator, words of survivorship should have been inserted to exclude the operation of the clause of the statute referred to. This clause refers to the will of a father, grandfather, or other relative, and places all three of these classes on the same footing. The rule of construction is to be precisely the same as if it were the case of the will of a father to his children. Would any court construe a similar bequest to "my sons and daughters," to mean to the son or daughter who should by chance

survive him, to the exclusion of his grandchildren? Such a con-
struction would defeat the whole law. (Dwarr. Stat. 632.) In
Gordon v. Guitar, 17 Mo. 412, the bequest was to a child dead
at the time of the execution of the will — a bequest at common
law void — and yet it was held that her children took the portion
thus devised. (Smith's Case, 2 Dess., S. C., 123; Hamilton's
Ex'r v. Lewis, 13 Mo. 188.)

*A. Hamilton*, for respondent.

I. There is nothing on the face of the will from which to infer
that the testator intended to use the words "sons and daughters"
in any other than their proper legal sense. These words do not
in themselves embrace the grandchildren of William Sheppard or
their descendants. (Radcliffe v. Buckley, 10 Ves. 105; Tier v.
Pennell, 1 Edw. Ch. 354; 2 Redf. Wills, 336–9, 354; Horwitz
v. Norris, 13 Wright, 218; Sheets v. Grubbs, 4 Metc., Ky., 339;
Churchill v. Churchill, 2 Metc., Ky., 466; Walker v. Williamson,
25 Ga. 549; Stoddard v. Nelson, 6 DeG. M. & G. 68; Crooks
v. Whitby, 7 DeG. M. & G. 490; Izard v. Izard, 2 Dess. 308;
Relff v. Rutherford, 1 Bailey, 7; Elliott v. Elliott, 12 Sim. 235;
Ballard v. Ballard, 18 Pick. 41.) The word "son" is never
taken for "grandson," any more than "child" is taken for
"grandchild" (Stead v. Burrier, Raym. 411, cited in Jackson
v. Staats, 11 Johns. 350); "daughter," therefore, does not
mean "granddaughter."

II. The case is not within our statute (Gen. Stat. 1865, p.
1569, § 12). This enactment was not intended to determine who
should be the primary objects of a testator's bounty, to create
estates where none had been devised, or to impart validity to
devises originally void. The single design of the Legislature was
to prevent a lapse. The statute contemplates that the will shall
name, designate, or ascertain the particular person who is in-
tended to take as devisee, and provides that if "said devisee"
(so determinately ascertained by the will) shall die before the
testator, then his lineal descendants shall be substituted in place
of such deceased devisee, and shall take the same estate that such
devisee would have taken if he had survived the testator. But

here the devise was to the sons and daughters of Col. Sheppard as a class, and not *nominatim* as individuals. Under such a devise, only those of the class who answered the description at the death of the testator were devisees. Such of the sons and daughters of Col. Sheppard as were dead when the will was made were never devisees or legatees. The gift was then, in effect, to Mrs. Hay of the entirety, for she only answered the description. Such is the rule peculiar to classes, and it is founded upon a presumed intent of the testator. When giving to a class, he looks to the contingency of fluctuations, to the possible increase or diminution in the number of those who he designs shall take : and by describing the objects of his bounty as a class, rather than *nominatim* as individuals, he manifests an intent that none shall be benefited by the gift but those who may belong to the class when the gift shall take effect. (1 Jarm. Wills, 295–6 ; Doe v. Sheffield, 13 East, 526 ; Viner v. Francis, 3 Bro. C. C. 658 ; Downing v. Marshall, 23 N. Y. Appeals, 366, 373, 374 ; Barber v. Barber, 3 Myl. & Cr. 697 ; Shuttleworth v. Graves, 4 Myl. & Cr. 38.) For further illustration of the difference between a naming or ascertaining of particular persons as devisees (*personæ designatæ*) and the designating of a class merely, see the following authorities: Connor v. Johnson, 2 Hill's Ch. 41 ; Lee v. Paine, 4 Hare, 251 ; Stires v. Van Rensselaer, 2 Bradf. 172 ; Cureton v. Massey, 13 Rich. Eq. 104 ; Mebane v. Womack, 2 Jones' Eq. 293 ; Satterfield v. Mayes, 11 Humph. 58–9 ; Beasely v. Jenkins, 2 Head, 199 ; 1 Redf. Wills, 386 ; 2 Redf. Wills, 505 ; Alexander v. Walch, 3 Head, 493 ; 1 Jarm. Wills, 313. It necessarily follows that our statute is inapplicable. The purpose of all such statutes is undoubtedly to prevent a lapse, and where no lapse would occur if the statute had no existence there is no room for its interposition. Similar statutes have been enacted in most of the States as well as in England, but none of them have ever been otherwise applied, or been supposed to work a substitution of devisees or legatees in any case where, without it, there would be no lapse. Of course they are inapplicable to devises to a class, when at the death of the testator there is any member of the class living to take, because

there is no lapse to provide against, because none of the class who died before the time fixed for vesting are devisees; and because, therefore, if the children of deceased members of the class can take, they must take in opposition to the will. This is well stated in 1 Jarman on Wills, 313. In Billingsley v. Tongue, 9 Md. 575, where the devisee, who was specially named, was dead before the date of the will, under the statute (act of 1810, ch. 34, § 4) — "no devise shall lapse, or fail of taking effect, by reason of the death of the devisee in the lifetime of the testator"— it was held to be a void, and not a lapsed, legacy; that "if he died after the will was made and before the testator" it was a case of lapse, but "if he died before the date of the will" the legacy was void from the beginning. The case of Sheets v. Grubbs, 4 Metc. 339, completely covers our case and sustains the views we have taken. It was a devise "to the children of my sister M. B." Mrs. M., one of the children, was dead before the date of the will, leaving one child, the plaintiff. The aid of the statutes was invoked. *Held*, notwithstanding its peculiar provisions, that Mrs. M. was not embraced in the devise, and was therefore not a devisee under the will. It was said that the devise was to those children who were living at the date of the will, and not to those who were dead; that any presumption that the testator intended to give an estate to persons he knew were not in existence, was "altogether inadmissible," and that "if the devise had been to the children by name, or to the ten children of M. B., the issue of such as may have been dead at the making of the will would have taken under the statute." See also Dazey v. Killam, 1 Duv. 404, and Dunlap v. Shreve, 2 Duv. 334, 342; Grose's Estate, 10 Barr, 360; Jackson v. Roberts, 14 Gray, 550; Young v. Robertson, 11 Gill & Johns. 328; Craycraft v. Craycraft, 6 Har. & J. 54. The case of Guitar v. Gordon, 17 Mo. 408, relied on by the other side, has nothing in common with this; there is an utter want of analogy between the two cases. That was a proceeding by the grandchildren of David Gordon "to have an intestacy declared upon the ground that they were not provided for or named in his will;" and it would seem that the only explanation of which the case is

susceptible is that the court were very clearly of the opinion that these grandchildren were provided for by the testator's will; that it was undeniably his intention that these children of Emily Guitar (his grandchildren) should take their mother's share; in other words, that by fair construction and intendment, the children themselves were the original devisees; and if so, they took directly under the will itself, and not by way of substitution under the statute.

III. It is well settled that parol or extrinsic evidence is inadmissible to control the plain, unambiguous words of the will, or to prove intention *aliunde*. (Wigr. Wills, 89, 90; Gregory v. Cogwill; 19 Mo. 415; Bradley v. Bradley, 24 Mo. 315; Williams v. Carpenter, 42 Mo. 342.) But, as declared by the court below, even if this evidence were legal and competent, it would not affect the proper construction of the will; the result would be the same. ,This evidence only showed that the testator had neither knowledge, remembrance, nor belief as to the existence or death of any particular individuals of these children. He could not, therefore, have named them if he had wished to do so. He could only designate them as a class generally by this mode of gift, which indicated in itself this very uncertainty in his mind in regard to the individuals who might compose the class. His declaration that he "wished to give a portion of his property to his uncle Sheppard's representatives or children" fails to show an intention different from that expressed by the terms employed in the will. In Cook v. Whitby, 7 DeG. M. & G. 490, already cited, argument drawn from any "presumption that the testator knew the state of the family" was deemed "quite untenable." In Sheets v. Grubbs, 4 Metc., Ky., 339, it was said that any presumption that the testator intended to give an estate to persons he knew were not in existence, was "altogether inadmissible." And in Doe v. Sheffield, 13 East, 256, Bayley, J., remarked: "I do not see how the want of knowledge of the testator of the death of the two at the time of making his will, which the argument for the plaintiff supposes to have been the fact, should prejudice the sister who alone survived at that time."

WAGNER, Judge, delivered the opinion of the court.

William H. Bell, the testator, died about the 20th day of December, 1865, without issue and unmarried, seized and possessed of both real estate and personal property. By his will, after the bequest of a number of pecuniary legacies, he proceeded to dispose of the residue of his estate to various persons in certain specified portions. By the tenth clause he devises the one undivided eighth of said residue as follows:

10. "It is my will and desire, and I hereby give, devise, and bequeath unto the sons and daughters of my deceased uncle, William Sheppard (Col.), one undivided eighth of said balance of my estate of every nature and kind whatsoever."

Col. William Sheppard died in 1822, in North Carolina, where he had always resided, leaving eight children, three sons and five daughters. All of these children, with the exception of Susan J. Hay, the defendant, were dead at the making of the will, and, with one exception, all left children. Col. Sheppard was the benefactor and friend of the testator in his early life, and, on the trial, evidence was adduced showing that all the sons and daughters named in the will were known to the testator to be dead, save two, besides the defendant. The testator, at the time of preparing the notes for the drafting of his will, said that he wished to give a portion of his property to his uncle Sheppard's representatives or children.

The special term of the Circuit Court, in its construction of the will, decided that the defendant, Susan J. Hay, was not entitled to the whole of the share provided for in the tenth clause, as survivor, but that the other defendants, the descendants of the children of William Sheppard, were entitled to take the share which their ancestors, if living, would be entitled to. On appeal, the general term reversed this decision, and adjudged and declared that the said Susan J. Hay was entitled to the whole of the share.

The rule is undoubtedly established as a principle of common-law construction, that a devise to a class of persons takes effect in favor of those who constitute the class at the death of the testa-

tor, unless a contrary intent can be inferred from some particular language of the will, or from such extrinsic facts as may be entitled to consideration in construing its provisions.  In other words, where a bequest or devise is made to a class of persons subject to fluctuation by increase or diminution of its number, in consequence of future births or deaths, and the time of payment or distribution of the fund is fixed at a subsequent period, the entire interest vests in such persons only as at that time fall within the description of persons constituting such class.  Jarman, in his work on wills, speaking of this subject, says: "Where, however, the devise or bequest embraces a fluctuating class of persons who, by the rules of construction, are to be ascertained at the death of the testator, or at a subsequent period, the decease of any such persons during the testator's life will occasion no lapse or hiatus in the disposition, even though the devisees or legatees are made tenants in common; since members of the class antecedently dying are not actual objects of gift.  Thus, if property be given simply to the children, or to the brothers or sisters of A., equally to be divided between them, the entire subject of gift will vest in any one child, brother or sister, or any larger number of these objects surviving the testator, without regard to previous deaths; and the rule is the same where the gift is to the children of a person actually dead at the date of the will, in which case, it is to be observed, there is this peculiarity: that the class is susceptible of fluctuation only by diminution and not by increase, the possibility of any addition by future births being precluded by the death of the parent." (Jarm. Wills, 295–6.)

But this doctrine concerning legacies given to classes of persons rests on the intention of the testator as manifested by his will— his intention in this, as in all other cases, if it be not repugnant to law, being the guide of courts in the construction of a will. Conceding the rule established by the authorities to be as above stated, the question is whether, by our statute, and the circumstances connected with this will, the descendants of the deceased sons and daughters of Col. Sheppard are not entitled to take a proportionate part.

The statute concerning wills provides that "when any estate

shall be devised to any child, grandchild, or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real or personal, as such devisee would have done in case he had survived the testator." (2 Wagn. Stat. 1366, § 11.)

This section of the statute was discussed and construed in the case of Guitar v. Gordon, 17 Mo. 408. There the plaintiffs were the children of Emily Guitar, who was the daughter of David Gordon, the testator. Gordon had a large family of sons and daughters, all of whom survived him except Emily Guitar, and she had been dead about a year before the making of the will. The testator named all his children in the will, and gave legacies to some of them, and recited the sums he had given to the others by way of advancement. Emily Guitar was mentioned in the will as well as the other children, and, though dead at the time, no mention was made of her death, nor were her children named as provided for. The testator recited in his will that " I have heretofore given to my daughter Emily Guitar, in property, the sum of nine hundred and seven dollars, by way of advancement." After these specific devises, the testator declared: " there will then remain a large amount undisposed of, which I direct shall be distributed among all my children, share and share alike, except my son James M. Gordon," who had already been provided for. Here it will be perceived that no devise or bequest was made to Emily Guitar, except in the residuary clause of the will, and then the gift was made to the children as a class.

This court, after mature consideration, held that there was no intestacy as to Emily, for she was expressly named in the will, and that, under the section heretofore quoted, although she was named as a class and dead at the time the will was executed, her children were entitled to take the part that she would have had if living.

The statute contemplates that among children and relatives, if part of them be dead and part living, the children of those dead shall take the place of the deceased parent. The testator, Bell, though knowing some of the sons and daughters of his uncle to be dead, and not being informed as to some of the others, evi-

dently regarded them as though they were all alive. Their deaths were in no manner alluded to, and, considering all the attendant circumstances, I have no hesitation in arriving at the conclusion that his object was that the children of those deceased should share his bounty. From this conclusion it necessarily results that the judgment at general term must be reversed, and that of the special term affirmed. The other judges concur.