Minshalu, J.
The original suit was brought by the executor of Aaron Paxson, deceased, to obtain a construction of an item of the will, about which he was embarrassed in the execution of his trust. The testator first devised all his estate to his wife for life, and then, after making certain other provisions, by the eighth item, on which the questions arise, he first directs his executors (we give the substance quoting only those parts where the language is material) on the death of his wife to convert his lands into money, and to divide the proceeds and other funds arising from his estate, into four equal parts, one of which he then' gives to his daughter Julia A. Stroop “ if she be living, or to her heirs if she be dead at the time the same is ready to be paid ; ” he then gives a like share and upon the same terms to the son of his daughter Ivey Varner. He then disposed of the other two shares as follows: One is to be invested in land as soon as practicable by his executors, and “conveyed” to his son Ezeriah Paxson “for the term of his natural life and to his children in fee-simple afterwards.” The other is, in like manner, to be invested in land as soon as possible, and “ conveyed ” to his son Isaac Paxson “for the term of his natural life afterwards to his children in fee-simple.” And in the selection of lands so to be purchased for his sons Ezeriah and Isaac and their respective children, he directed that his executors should be guided as far as practicable by the choice and wishes of his respective sons; and directed the money to be kept at loan on interest properly secured, until the investment should be made.
The facts on which the questions as to the construction of the devise arise, were found by the court. From this finding it appears that the will was made in 1868, and the testator died in 1884; that at the time of the making of the will Isaac *313 was living, and had also four children living, two sons, James and Michael, and two daughters, Almira intermarried with Alexander L. Woolley, and Nancy intermarried with John Caulfield ; that Isaac, his mother, wife of the testator, and his two daughters, Almira and Nancy, all died before the testator; and that the two daughters both died intestate, leaving issue that survived the testator, to-wit: Pearl Woolley, an infant daughter and only child of Almira, and Euphemiaand Maggie Caulfield, infants and only children of Nancy. The court also found that it will be for the interests of all concerned, Isaac being dead and no purchase having as yet been made, for the executor to sell the land and distribute the proceeds according to the terms of the will.
The two sons James and Michael, who survived the testator, claim that as the surviving children of their father, Isaac, they are entitled to the entire devise made to his children. On the other hand it is claimed that the issue of Almira and Nancy each take the share which the mother would have taken, under the devise to the children of Isaac, had she survived the testatator. If no change had been made by statute in the rule adopted by courts for the construction of a devise to children as a class, the construction claimed by the surviving sons must prevail, however unjust it may seem. Hawk. Wills, ch. 7. But a provision of our wills-act, introduced in 1840 (Swan's Stat. 1841 p. 999), amended in 1886, (S. & S. 934), and, as amended, embodied in § 5971, Revised Statutes, reads as follows :
“ Sec. 5971. When a devise of real or personal estate is made to any child or other relative of the testator, if such child or other relative shall have been dead at the time of the making of the will, or shall die thereafter, leaving issue surviving the testator, in either case such issue shall take the estate devised in the same manner as the devisee would have done, if he had survived the testator; or if such devisee shall leave no such issue, and the devise be of a residuary estate to him or her, and other child or relative of the testator, the estate devised shall pass to, and vest in such residuary devisee surviving the testa *314 tor, unless a-different disposition shall be made or required by the will.”
The court below, under the provisions of this statute, construed the will in favor of the claim of the issue of Almira and ■Nancy. On error the circuit court reversed the j udgment of the common pleas. We think, however, that the common pleas was right, and that its judgment should have been affirmed.
The rule as to the lapsing of devises and legacies that prevailed before the statute, defeated, in most cases, the intention of the testator. He generally made his will with reference to the objects of his bounty as they existed at the time and as though his will took effect at the date of its execution— not apprehending that a lapse would occur in case any of them should die before himself, unless some express disposition should be made in anticipation of such event. The statute was passed to remedy such disappointments, and should receive a liberal contraction, so as to advance the remedy and suppress the mischief. It among other things provides that where a devise is made to a child or other relative of the testator, who dies before the testator, the issue of such object of his bounty shall take the portion devised to such child or relative. Nothing is more just and conformable to the probable intention of the testator in every instance. The fact that the child or rclatve is not mentioned by name should not defeat the application ofthe statute, where the language applied to the facts, as they were at the execution of the will, designates a child or relative as an object of the testator’s bounty, with as much certainty as if it were mentioned by name. At the time the testator made this will his son Isaac had four children living. They were all adults and their names well known to him ; and the devise that he makes is, to Isaac for life and then to his children in fee-simple. This, in the light of the circumstances, must be taken in a distributive sense, and is a devise to each of Isaac’s children of the fee-simple in remainder, as definitely as if it had been to each by name. For, as observed by Vice-Chancellor Malins in Re Porter's Trusts, L. R. 8 Eq. 52, there can be no substantial difference between a gift, for instance, to six children named, and a gift to children simply, there being six. *315 The real objects of the gift are in such cases easily ascertainable by parol testimony.
It is not, however, claimed that the individuals constituting Isaac’s children were, at the date of the will, indefinite, and .so, incapable of taking as individuals under its provisions, but that the devise was to them as a class, and must be construed, under the rules applicable to such devises, not as a devise to each of the children, but to such of them as should survive the testator. The ground of this rule was that no one can be a ■devisee or legatee until the will takes effect by the death of the testator. But any argument drawn from this rule proves too much; for’, if applied according to its r ’ason, it would abrogate the statute, as no object, however definitely described, ■can take in this sense, until the will ceases by the death of the testator, to be ambulatory. It was upon this ground that a devise to one by name who predeceased the testator, was held to lapse. The fact that in the latter case the extinguished or lapsed legacy went to the residuary legatees, or to the heir, where there were no such legatees, whilst in the case of the death of a member of a class it went to the survivors, supplies no reason for excluding the application of the statute where the devise is to a class. It was not because the extinguished legacy or devise was disposed of by the law in one way rather than another, that the statute was adopted, but because it did not go to the issue of the deceased devisee, as the testator in .all probability supposed it would. In other words, it was not designed to prevent the failure of a legacy by the death, of the legatee before the testator, that were impossible, but to make a new disposition by law of such legacy, where the testator had himself failed to do so, in anticipation of the possible ■death of any one of the chosen objects of his bounty before himself, where such object was a child or other relative of his. Hence the only question that can arise in the construction oi a will under this statute is, whether it, as a matter of fact, contains a devise of real or personal estate to a child or other reh ative of the testator, which such devisee would have taken had he survived the testator; if so, then by the express language ■of the statute, the issue of such devisee surviving the testator, *316 “ shall take the estate devised in the same manner as the devisee would have done if he had survived the testator,” unless-a different disposition shall be made or required by the will. Now, it is a settled rule that in a devise to children as a class,, each member who survives the testator, then takes a vested interest in the devise : Hawk. Wills.. 68; and this is so-though the devise is not immediate, subject, however, in such-case to the liability to be partially divested by children subsequently coming into existence before the period fixed for enjoyment. Hawk. Wills, 71; Schouler Wills, § 562. Hence, as under a devise to a class each member who survives the testator, would, independent of the statute, take an aliquot part of the devise as a tenant in common with the other survivors, therefore, under the statute in such case, the issue of a deceased member of the class surviving the testator, must take what the deceased would have taken had he survived.. Any other construction would render the statute nugatory in a large class of cases to which its provisions are by its terms-directly applicable.
It seems this is the first case that has been presented to this court requiring a construction of this statute. But statutes similar to our own have been adopted in most, if not all of the states of the Union. These, whilst differing in detail, in general provide, that if such devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate as the devisee or legatee would have done, in case he survived the testator; and it has generally been held in these states, that the statute applies to a devise to a class as-well as to a désignated individual. Moore v. Dimond, 5 R. I. 121; Moore v. Weaver, 16 Gray, 305; Guitar v. Gordon, 17 Mo. 408; Jamison v. Hay, 46 Mo. 546 ; Cheney v. Selman, 71 Ga. 384; Yeates v. Gill, 9 B. Mon. 203.
But two cases ar.e found in which a different view seems to have prevailed. Gross’s Estate, 10 Pa. St. 360; Young v. Robinson, 11 Gill & J. 328. The only reason assigned in the former case is that, “ The act was intended to prevent a vested-legacy from lapsing by death, which,” the court adds, “ can not apply here, as the legacies did not vest at all until the- *317 death of the testator.” Now, it is strange that it did not suggest itself to the mind of so good a court, that no legacy vests until the death of the testator, and that such a construction •would work a virtual repeal of the statute. Moreover, our statute is general in terms; it is not limited to vested devises only, but applies to any “devise of real or personal estate to a child or relative of the testator; ” and, whether vested or contingent, it is. declared, that where such devisee predeceases the testator, the surviving issue of such deceased devisee ■“ shall take the estate devised in the same manner as the devisee would have done if he had survived the testator.” The decision in Young v. Robinson is placed on the ground that the object of their statute is “ to provide for such cases of legacies and devises as by the rules of law lapsed or failed to take effect by the death of the devisee or legatee in the life of the testator,” — the statute of Maryland providing that the devise “ shall not lapse or fail of taking effect ” by the death of the devisee in the life of the testator, but shall have the same effect to transfer the title in the property mentioned as if such devisee had survived the testator. This decision is placed on .a mistaken notion of the essential element of a lapsed legacy. Every legacy is said to lapse that fails by reason of the death of the legatee in the life of the testator. Bro. Law Die. “ Lapse,” 304. The disposition made by the law, in the absence of any statutory provision, is not material. It went to the residuary legatees or devisees, if there were such, and if not, it went to the heir, or where the failure occurred in a devise to a class, by the death of one of the members, it went to the survivors; but whether it went to residuary legatees, or to the heir, or to the survivors of a class, did not affect the essential character of the extinguished gift — it was, properly speaking, a lapsed legacy or devise in either case. The statute of Kentucky, like that of Maryland, also contains the negative clause “ shall not lapse,” and in Yeates v. Gill, supra, it was contended that it did not apply to a devise to “ children,” as in such case there can be no lapse so long as there are survivors of the class. But the court rejected this view, and said • .“ We are of the opinion that this statute was intended *318 to promote equality in the distribution of estates, and to sub-serve the probable intention of testators under a change of circumstances not expressly provided for only (as might be presumed), because express provision was not understood to be necessary ; and it should be construed liberally for the effectuation of those objects.” It will be observed that our statute contains no such negative words; it simply affirms that the issue of such deceased devisee surviving the testator, shall take what the deceased would have taken, had he survived; and, as before observed, under our statute the construction is solved by determining whether, in that event, he would have taken as a devisee under the will.
It is also argued that the issue can not take because the devise to the children of Isaac is, as claimed, a contingent one, that is to say, depends not only upon their surviving .the testator, but also the wife of the testator, to whom was given a life estate in the whole property, and, to the determination of which estate, the gift to the father for life as well as the remainder to the children was postponed. To this it may be answered: (1) That the vesting in interest of the devise is not made to depend by the will upon any condition whatever; the devise is absolute — no adverbs of time nor words of survivorship being used, and therefore must be construed as a gift vesting in interest if not in possession at the death of the testator. Hawk. Wills, 71; Linton v. Laycock, 33 Ohio St. 128 ; Schouler on Wills, § 560, 562. (2) As heretofore shown, the statute applies to contingent gifts as well as to vested ones. And (3) that by the death of Isaac the tenant for life and of his mother, in the life-time of the testator, both of these prior life-estates were eliminated from the will, and the devise to Isaac’s children was thereby accelerated so as to take effect at the death of the testator, not only as an estate in interest, but also in possession ; so that, if the inchoate devise was contingent at the date of the will, by reason of the creation of these life-estates, it ceased to be such before the death of the testator. By the extinction of these life-estates the devise to Isaac’s children took effect at the death of the téstatelas an immediate devise to the survivors and the issue of such *319 as had deceased, in the same manner, and with like effect, as if no inchoate prior estates had been created at the date of the will. 2 Williams’ Exr’s, 1219. “ If money from whatever source arising, be directed to be laid out in the purchase of land to be settled in any manner, equity will regard the persons on whom the lands are to be settled as already in the possession of their estates.” Will; Real. Pr. 164.
The fact that before the death of the testator, his wife and his son Isaac had died, so that there were no prior intervening estates postponing in any way the bequest to Isaac’s children, renders the decisions in Richey v. Johnson, 30 Ohio St. 288, and in Hamilton v. Rodgers, 38 Ohio St. 242, on which much reliance seems to be placed by counsel for defendant in error, wholly inapplicable here and their examination unnecessary.
It is also claimed that the form of the bequest to his daughter Julia A. Stroop, and to the son of his daughter Ivey Varner, indicate an intention on the part of the testator, that the survivor only of the. children of Isaac should take, and so as to his son Ezeriah’s. But we think that the form of the former devises can shed very little light upon his intention as to the latter. In the first two instances the bequest to each, as well as to the heirs of each, is necessarily contingent, until the time for distribution arrives. For example, the designated share is to be paid Julia “if she be living, or to her heirs if she be dead at the time the same is ready to be paid,” clearly indicating that “ heirs ” are to take by substitution, should the mother die before the time of payment arrives. If she survives that time, she takes absolutely, and the conditional gift over to the “ heirs ” is gone. In the latter instances the gift is to each son for life, and then to his children in fee-simple, without any condition as to either estate. The death of the father simply accelerates the enjoyment of, but does not create or vest the devise to the children.

Judgment of the circuit court reversed, arid that of the common pleas affirmed.

Owen, C. J., and Williams, J., dissent.